## Dotson v. Owsley.

### (Decided January 6. 1911.)

### Appeal from Floyd Circuit Court.

1. Promissory Note—What Law Controlled By.—A promissory note executed prior to the passage of the new Negotiable Instrument Act is controlled by the law then in force.

2. Signing on Back—Assignor when to be Treated as.—Person signing his name upon the back of a promissory note is to be deemed and treated as an assignor unless in writing a different purpose be expressed, or the note can be legally placed on the footing of a bill of exchange.

3. Laches—Release of Assignor.—Failure of the holder to bring suit at the term of court next ensuing after the maturity of the note and to prosecute the maker to insolvency with due diligence, will release the assignor unless the latter prevented the bringing of the suit by promising to renew or otherwise misleading the holder. But a promise to renew made after the assignor has been released by the laches of the holder is without consideration, and will not estop the assignor from relying upon the laches of the holder.

JAMES GOEBEL for appellant.

WILLIAM DINGUS and W. H. MAY for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

On April 21st, 1903, C. C. Davis executed and delivered to appellee, Robert Owsley, a certain promissory note by which he agreed and promised to pay to the latter, four months thereafter, the sum of $300.00. Before its delivery to Owsley, appellant, L. M. Dotson, and R. E. Stanley indorsed the note. On January 30th, 1904, Robert Owsley brought suit on the note against C. C. Davis, L. M. Dotson and R. E. Stanley. Davis made no

defense, and judgment went against him. Upon the trial of the case the court directed a verdict in favor of Stanley and against Dotson. The latter filed motion and grounds for a new trial. This motion was sustained, and the judgment, so far as it affected Dotson, was set aside. Thereafter an execution was issued on the judgment obtained against Davis, and return of "no property" made by the sheriff.

On January 5th, 1905, Robert Owsley instituted this action against appellant and R. E. Stanley. In the petition he set forth the note, the fact that it had not been paid, and the further fact that he had obtained judgment against Davis and that the execution which he had had issued from the Clerk's office of the Floyd Circuit Court and placed in the hands of the sheriff had been returned "no property found." Appellant Dotson defended on the ground of laches on the part of appellee in failing to prosecute Davis, the maker of the note, to insolvency within a reasonable time. To overcome the effect of this plea, appellee in his pleadings asserted that his failure to bring suit was due to the fact that Dotson said he would take up or renew the note. Evidence was heard and the case submitted to a jury, which returned a verdict in favor of appellee against Dotson. From the judgment based thereon this appeal is prosecuted.

As the note in question was executed April 21st, 1903, and prior to the Negotiable Instrument Act now in force, the note is governed by the law in force at that time. Section 481 of the Kentucky Statutes is as follows:

"Every person who shall sign his name upon the back of a promissory note shall be deemed and treated as an assignor to the party holding it, unless, in writing, a different purpose be expressed; or the note can be legally placed on the footing of a bill of exchange."

As the note in question was not payable at any bank in this Commonwealth and actually discounted by that bank or some other bank in this Commonwealth, it was not placed upon the footing of a bill of exchange; therefore, under the express terms of the section of the statute referred to, Dotson and Stanley were liable merely as assignors. Williams v. Obst, et al., 12 Bush, 267 That being true, in order to hold appellant Dotson liable on the note, it was necessary for appellee to file suit on the note at the term of the Floyd Circuit Court next ensuing

after the maturity of the note (Adams v. Robinson, 25 Ky. Law Rep., 853; Francis v. Gaut, et al., 80 Ky., 190; 1 Bibb, 178; unless appellee could show that he was prevented from suing at the first term of court after the note matured by reason of the assurance of Dotson that he would either take the note up or renew it, in which event Dotson would have been estopped from pleading that he was released from liability by appellee's failure to sue at that term. (American National Bank v. Smallhouse, et al., 113 Ky., 147.)

The evidence for appellee shows that, in January, 1904, and while the circuit court for Floyd county was going on, he went to appellant Dotson and asked him if he knew that Davis had gone out of business. Dotson replied that he did. Appellee then asked, ''What are we going to do with this note that I hold against you fellows?'' Dotson then went on talking about having it renewed if it suited appellee. Appellee said, ''I am willing to do what I can for my friends.'' Dotson replied, ''It is bad to jump on a man when he is down and hold him down; we ought to give him a show, it looks like.'' Appellee said, ''I think so, too.'' Appellant then promised to come down and fix up the note. He failed to do so, and this action was instituted. The evidence also discloses the fact that the next term of the Floyd Circuit Court after the maturity of the note, and at which appellee might have brought suit, was held in the month of September, 1903. The next term after that was held during the latter part of January, 1904. Appellant did not promise to fix up or renew the note prior to the September term. Appellee's only conversation with appellant occurred in January, 1904. At that time it was too late to bring suit at the January term. As appellee had failed to institute suit at the September term and also at the January term, he had allowed two terms of court to go by without proceeding against the maker of the note. That being true, appellant was released from liability on the note at the time appellee claims he promised to renew. That promise was not made in consideration of appellees not bringing suit against appellant, nor was it made under circumstances that were calculated to and did mislead appellee to his prejudice. Nothing appellee could then do could reinstate appellants liability. Appellants promise, made under these circumstances, was without consideration, and did not

estop him from pleading appellee's laches. (Sebree Deposit Bank v. Moreland, 96 Ky., 160.)

Upon appellee's own showing, appellant was entitled to a peremptory instruction, which he asked both at the clusion of appellee's evidence and at the conclusion of all the evidence.

Judgment reversed and cause remanded for proceedings consistent with this opinion.