[Civ. No. 5791. Second Appellate District, Division One.—January 30, 1928.]

THE DROVERS NATIONAL BANK (a Corporation), Respondent, v. F. O. BROWNE, Appellant.

Arthur F. H. Wright for Appellant.

Eugene Daney for Respondent.

WOOD (W. J.), J., *pro tem.*—Defendant was the president and principal stockholder of the National Auto Sales Com-

pany, hereafter referred to as the Company. On August 18, 1920, the Company, a' Colorado corporation, borrowed from the plaintiff bank the sum of $10,000 on a ninety-day note and on September 10, 1920, borrowed from plaintiff an additional sum of $12,000 on a separate note, making a total loan of $22,000. As these notes matured they were extended on new notes until May 18, 1921, when a single note for $22,000 was given by the Company and the old notes were surrendered. This note became due August 15, 1921, and on August 17, 1921, it was renewed by note dated August 15, 1921, and due November 14, 1921. Defendant was the indorser on all of these notes. The fifth finding of the trial court is as follows: "That on the 9th day of November, 1921, the defendant F. O. Browne called on the plaintiff at its banking house in the City of Denver, Colorado, and stated that he was going to California, and for that reason it would be inconvenient for him to be in Denver when the said note or any renewal thereof matured, and was then and there informed by the plaintiff that the said note maturing on the 14th day of November, 1921, would not be renewed without his guaranty, whereupon the said defendant, F. O. Browne, stated to the said plaintiff that he would give the bank a continuing guaranty covering the entire indebtedness of the National Auto Sales Company until it was liquidated, and thereupon delivered to the said bank the guaranty set forth in finding No. 3 hereof. That on or about the 15th day of May, 1922, the said obligation of the National Auto Sales Company to the Drovers National Bank, the plaintiff herein, was reduced to the sum of twenty thousand ($20,000.00) dollars. That at all the times herein mentioned the defendant F. O. Browne was, and still is, the president of, and the largest individual stockholder in the said National Auto Sales Company, and at all the times herein mentioned was the only financially responsible stockholder of said company. That there were only two other stockholders of the National Auto Sales Company, namely, D. R. Platt and W. W. Beeson, each of whom was also at various times an indorser on the several notes herein mentioned, but that each of them was at all of said times financially irresponsible." The guaranty set out in the third finding is in the following language:

"November 9, 1921.

"The Drovers National Bank,
 "47th & Lafayette Streets,
 "Denver, Colorado.

"Gentlemen: This is to certify that the undersigned will be personally responsible for the indebtedness of the National Auto Sales Company to the Drovers National Bank to the extent of $22000.00.

"Yours truly,
"F. O. Browne."

The tenth finding is as follows: "That the defendant by virtue of delivering as aforesaid to the plaintiff, the written guaranty set forth in finding 3 hereof, as well as by reason of the statements then and there made to the plaintiff by said defendant, induced the plaintiff to cancel and deliver at maturity, to the National Auto Sales Company its note maturing on November 14, 1921, on which the said defendant was endorser, and by reason of such guaranty and the repeated statements made by the said defendant to the plaintiff herein, that he, defendant, was responsible for, and back of, the note of the National Auto Sales Company held by the plaintiff, induced the said plaintiff to accept the various renewals thereof, some of which were without the endorsement of the defendant, owing to the fact that the said defendant was out of the State of Colorado at the dates of the respective maturity of the notes upon which he was not an endorser."

All of the findings heretofore mentioned are amply sustained by the evidence. The note of the Company maturing November 14, 1921, was renewed from time to time, sometimes with and at other times without the indorsement of defendant, depending upon the presence or absence of the defendant at the time of renewal. On May 15, 1922, the indebtedness was reduced to $20,000 and thereafter renewal notes were given by the Company for this amount until November 23, 1923, when the last renewal note was delivered to plaintiff. This note was made payable thirty days from its date. Plaintiff seeks to recover the principal sum of this note with interest thereon. Defendant was absent from Denver on November 23, 1923, and his name does not appear as an indorser on the note.

The eleventh finding is as follows: "That by reason of the foregoing facts the defendant is estopped from denying

his liability to the plaintiff on the said guaranty set forth in finding 3 hereof, although the court also finds that there was no consideration for said guaranty set forth in finding 3.''

The trial court correctly concluded that plaintiff was entitled to judgment. It is apparent, however, that judgment was based upon the ground of estoppel since there was a finding of failure of consideration. We agree with the final conclusion reached by the lower court that defendant is liable, but are of the opinion that there was sufficient consideration for the guaranty of defendant and that the judgment should be based on that ground. In determining whether there was a consideration for the guaranty the court should consider the matter in the light of the circumstances under which the guaranty was accepted. The obligation of the Company to the bank, evidenced by the promissory notes on which defendant was an indorser, was not paid or extinguished by the renewal notes. The same debt still existed. In *Savings & Loan Soc.* v. *Burnett,* 106 Cal. 515, 530 [39 Pac. 922], the court uses this language: ''It is the general rule that one executory contract does not extinguish another. It is also the rule that there must be an express agreement or understanding to that effect before another note, bill or check extinguishes and satisfies the indebtedness evidenced by an earlier one.'' See, also, *Dellapiazza* v. *Foley,* 112 Cal. 386 [44 Pac. 729], where it is said: ''Without the intention, and an express agreement of the parties, that the making and acceptance of the note should operate as payment or satisfaction of the original debt, to secure which it was given, it did not so operate, though it may have suspended the right of recovery until the maturity of the note.'' Since defendant was an indorser on the $22,000 note, which matured November 14, 1921, he was guaranteeing the payment of his own obligation as well as that of the maker of the note when he gave the guaranty on November 9, 1921. As an indorser he could have been sued on the note which was then in the possession of the plaintiff. Defendant induced the bank to renew the note which fell due November 14, 1921, without his indorsement only because it had already secured his guaranty of the payment of the indebtedness represented by the note. Without the guaranty the note would not have been renewed.

While the promise of the guarantor must be supported by a consideration, in most cases the one which supports the promise is the one which passes between the maker and the payee of the note. (*Howland* v. *Aitch,* 38 Cal. 133.) That the surrender of a valid note will furnish the consideration for the making of a new one is well settled. In *Mahana* v. *Van Alstyne,* 179 Cal. 725 [178 Pac. 853], the defendant and her husband had, on November 5, 1914, executed to plaintiffs a note and trust deed covering the separate property of the defendant, the note being given for the personal debt of the husband. Thereafter, on April 17, 1915, plaintiffs, at the request of the defendant, canceled said note and trust deed and defendant executed the note sued on. The lower court decided that this note was only collateral security for the previous debt of defendant's husband and was not supported by any consideration. In reversing the judgment the supreme court, speaking through Mr. Justice Shaw, said: "The fact that the original note was given for the debt of Guy Van Alstyne and that at no time was there any consideration running to him other than the several renewals and cancellations, does not aid the defendant. The giving of the deed of trust and the old note, which were at that time valid obligations, was a sufficient consideration for the note of $2500 sued on." See, also, *Shoenhair* v. *Jones,* 33 Cal. App. 545 [165 Pac. 971].

In *Brewster* v. *Baker,* 97 Ind. 260, it is said: "The surrender of an old note, and the substitution of the new note therefor, certainly constituted a sufficient consideration for the new note as between the payee and Hisey, the principal therein, and this being so, it must be held, we think, that the consideration of the new note was sufficient to sustain it as against the appellant, the surety of Hisey therein." In *Home Savings Bank* v. *Shallenberger,* 82 Neb. 507 [118 N. W. 76], the court uses this language: "It is elementary that the extension of time to a principal debtor is a sufficient consideration to support the guaranty by a stranger for the payment of a new obligation; and the fact that the guarantor is not a stranger to the obligation renewed but is himself liable for the payment thereof, does not alter the rule." See, also, *Buckner* v. *T. P. Clark's Executor,* 69 Ky. (6 Bush) 168; *White* v. *Western State Bank,* 119 Ill. App. 354; *Brandt* v. *Vanderveen,* 213 Mich. 121 [182 N. W. 35].

■ Defendant cannot complain that the guaranty was executed five days before the renewal of the note maturing November 14, 1921. In *Citizens Trust etc. Bank* v. *Bryant,* 53 Cal. App. 735 [200 Pac. 823], a loan was made and a mortgage by George A. Bryant was given to the bank bearing date October 16, 1915. The bank declined to make the loan on the security offered, but insisted as a condition that defendant W. J. Bryant guarantee the note in part. W. J. Bryant executed the guaranty on November 5, 1915, and thereafter the bank paid over the money agreed to be loaned. The court, in affirming judgment for plaintiff, said: "One of the points made by appellant is that there was no sufficient consideration for the contract of guaranty and that the obligation thereof must fail because it was not entered into at the time of the loan transaction. This contention has not the semblance of any real facts upon which to found it, unless the mere difference in the date of the note and mortgage and that of the contract of guaranty affords such ground. Section 2792 of the Civil Code provides: 'Where a guaranty is entered into at the same time with the original obligation, or with the acceptance of the latter by the grantee, and forms with that obligation a part of the consideration to him, no other consideration need exist.' All of the evidence, including the terms of the contract of guaranty itself, shows conclusively that there was but one transaction and that the note and mortgage of George A. Bryant was not accepted by the bank until the guaranty was furnished." And in *Howland* v. *Aitch, supra,* this language is found: "It is a matter of no moment at what time, relative to each other, the contracts may have been made and delivered, and the consideration may have passed, if they together constituted one transaction." See, also, *Tomanovich* v. *Casey,* 106 Wash. 644 [180 Pac. 919]; 13 Cal. Jur., p. 101.

■ It cannot be maintained that it was necessary to use express language to establish an agreement on the part of the bank to forbear bringing suit on a note maturing on November 14, 1921. When we consider the entire transaction in the light of all its surrounding circumstances it is apparent that no such language was necessary, since undoubtedly it was the understanding of the parties that there should be a renewal of the note maturing November 14, 1921.

Clearly there was an implied contract to that effect. No other reasonable construction can be given to the conduct of the parties. Section 1621 of the Civil Code provides: ''An implied contract is one the existence and terms of which are manifested by conduct.''

■ It has been held in most jurisdictions, among them California, that a general averment that the contract sued on was executed without consideration ''is but an allegation of a conclusion of law.'' (31 Cyc. 53; 6 Cal. Jur. 209; *Gushee* v. *Leavitt,* 5 Cal. 160 [63 Am. Dec. 116]; *Rivera* v. *Cappa,* 29 Cal. App. 496 [156 Pac. 1016].) The finding of no consideration contained in the eleventh finding of the trial court may, therefore, be disregarded, since it is a finding of a conclusion of law. The court properly concluded that plaintiff was entitled to judgment and this conclusion is supported by the actual findings made. ''It is not incumbent on the prevailing party to defend the logic of the judge. It is enough if the decision be correct.'' (*Chabot* v. *Tucker,* 39 Cal. 434.)

The judgment is affirmed.

Houser, Acting P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 29, 1928, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing herein is denied.

In denying such petition we withhold our approval from that portion of the opinion of the district court of appeal as follows:

''It has been held in most jurisdictions, among them California, that a general averment that the contract sued on was executed without consideration 'is but an allegation of a conclusion of law.' ''

■ As to that question we express no opinion. We agree with the district court of appeal, however, that under the facts as shown and found in this case the eleventh finding of the trial court may be disregarded as being a conclusion of law. The court found the facts surrounding the execution of the written guaranty of November 9, 1921, by the

appellant. Whether these facts were sufficient to show a consideration for said written guaranty was purely a question of law.